1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
2
**OAKLAND DIVISION**

3
INFUTURIA GLOBAL LTD.,                          No.  C 08-4871 SBA
4
Plaintiff,                    **ORDER**
5
v.                                       **[Docket No. 24, 37, 63]**
6
SEQUUS PHARMACEUTICALS, INC.
7   et al.,

8                      Defendants.

9   _____

10

11

12          Before the Court are the following motions:

13          1.      Plaintiff's Motion to Remand [Docket No. 37];

14          2.      Defendant Sequus Pharmaceuticals, Inc.'s Motion to Dismiss or More Definite

15                  Statement [Docket No. 24].

16          3.      Defendants The Hebrew University's and Yechezkel Barenholz's *Ex Parte*

17                  Application to Stay or Continue the Proceedings Until Defendants' Motion to Stay

18                  Proceedings is Heard [Docket No. 63]

19   Having read and considered the argument presented by the parties  in the papers submitted to the Court,

20   the Court DENIES the motion to remand, GRANTS WITH LEAVE TO AMEND the motion to dismiss

21   or for more definite statement and DENIES AS MOOT the Ex Parte Application to Stay or Continue

22   the Proceedings Until Defendants' Motion to Stay Proceedings is Heard.

23                                      **BACKGROUND**

24          **I.      Factual Background**

25          Plaintiff Infuturia Global, Ltd. ("Infuturia") is a British Virgin Islands corporation engaged in

26   the business of developing and marketing liposome related pharmaceutical products.

27          Defendant Sequus Pharmaceuticals, Inc. ("Sequus") is a Delaware corporation with

28   headquarters in Menlo Park, California.  Sequus makes lipid-based drugs, one of which is the cancer

drug Doxil.

Defendant The Hebrew University of Jerusalem ("Hebrew University"), is an Israeli corporation and Yechezkel Barenholz ("Barenholz") (collectively "Israeli Defendants") is an Israeli citizen residing in Israel.  Professor Barenholz is a Hebrew University employee, and engaged in research regarding liposomes.  Professor Barenholz has done research for both Infuturia and Sequus.

On March 19, 1990, Infuturia entered into a written contract entitled "License Agreement" ("Agreement") with Yissum Research and Development Company of the Hebrew University of Jerusalem ("Yissum").  Yisssm is not a party to this action.  Yissum is a wholly-owned subsidiary of the Hebrew University and exists to protect and commercialize the intellectual property that is created by the faculty and students of Hebrew University in the course of their various research projects.

The Agreement establishes rights and obligations concerning Patent No. 4,812,314 (the "314 Patent").  Infuturia received "an exclusive worldwide license to develop, market, use, manufacture, exploit and commercialize the Patent, Compounds, Products, and Improvements subject to terms and conditions" of the Agreement. [Ageement ¶ 2.01 and App. A]. The '314 patent is a chemical compound that provides a method or process for lipid transport in the blood from the organs and tissues to liposomes, a purpose of which is the quick transport of cholesterol to the liver. [Original Complaint ¶ 6].

The Agreement contains a provision that obligates the parties to arbitrate in Israel "any dispute or difference of opinion on which the parties hereto cannot reach agreement and which is connected in any way to the implementation of" the Agreement.  [Agreement ¶ 17].

## II.      Procedural History

On October 26, 1998, Infuturia filed a Complaint ("Original Complaint") alleging that Defendants tortiously interfered with the Agreement between Infuturia and Yissum.  Briefly, Infuturia alleges that Yissum, through Professor Bahrenholz, had a preexisting relationship with Sequus to develop and market a liposome that could circulate in the human body for a long period of

2

time (the "Liposome Project") and that discoveries made pursuant to the License Agreement were not reported to Infuturia but were licensed or assigned to Sequus instead, thereby breaching Infuturia's exclusive contractual rights. [First Amended Complaint ¶¶ 9, 45-47].

Shortly after filing suit, non-party Yissum petitioned for an order compelling arbitration in Israel, and obtained a stay of the litigation pending the outcome of arbitration in Israel. Yissum and Infuturia brought claims against each other in arbitration.  Yissum claimed that Infuturia failed to pay  $125,00 under the Third Addendum of the Agreement and that the failure to pay entitled it to cancellation of the contract.  Infuturia counterclaimed for $45 million, alleging that during the laboratory trials of the '314 patent in Milan, Italy, a sensational discovery was made that was not reported to Infuturia and instead formed the basis for the secret development of the Sequus drug, Doxil.

On May 21, 2006, the arbitrator issued his decision ("Arbitral Award").  The arbitrator granted Yissum's claim in part, ordering Infuturia to pay Yissum $32,445, but denying that cancellation of the Agreement was proper. [Docket No. 83; Israeli Defendants' Request for Judicial Notice, Ex. C, Arbitral Award ¶¶ 15-22, 43 ]. The arbitrator rejected Infuturia's crossclaim in its entirety. The arbitrator found that the Doxil liposome was invented and developed two years earlier, before the Milan Trials, and that the two liposomes do not share any similarities.  The arbitrator also found there was no evidence that Yissum and Professor Barenholz misled Infuturia with regard to the nature and results of the laboratory trials. [Arbitral Award, ¶¶ 27-43].  An Israeli court confirmed the arbitral award on  September 3, 2006, pursuant to the parties' joint petition.

Two years after the Arbitral Award, Infuturia obtained an order lifting the stay of the state court litigation, and on August 15, 2008, filed its First Amended Complaint ("FAC").  The FAC alleges the following claims:  tortious interference with the Agreement (Counts 1-3); civil conspiracy to interfere with Infuturia's contractual rights under the Agreement (Counts 4-6); breach of fiduciary duty owed by the Israeli Defendants by virtue of their relationship with Yissum (Counts 10- 11); conversion of Infuturia's contract rights (Counts 7-9); and fraudulent concealment by all defendants of the fact that Barenholz helped other manufacturers to create products that belonged to

3

1    Infuturia under the Agreement (Counts 12- 14).  In addition to filing the FAC, Plaintiff sought a

2    Petition to Confirm the Arbitration Award.

3           Defendants removed the action to federal court on October 24, 2008.  According to the

4    defendants, many of the factual allegations in the FAC are substantially the same as those asserted in

5    the counterclaim that was denied by the Israeli arbitrator.  In large part, both actions allege that

6    Professor Barenholz, the Hebrew University and Sequus conspired to profit, and indeed profited,

7    from research that fell within the scope of the original Agreement and second and third addenda to

8    the Agreement, specifically the compounds mentioned and described in the '314 patent. [FAC ¶¶ 45

9    et seq.].

10                                  **LEGAL STANDARD**

11   **I.      Motion to Dismiss and for More Definite Statement**

12          Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if it does not

13   "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a

14   motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all well-

15   pleaded facts are taken as true.  *Syverson v. IBM Corp.*, 472 F.3d 1072, 1075 (9th Cir. 2007).  A

16   complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

17   plaintiff can prove no set of facts in support of its claim which would entitle it to relief.  *Conley v.*

18   *Gibson*, 355 U.S. 41, 45-46 (1957).  A court may grant the plaintiff leave to amend, and leave to

19   amend is generally denied only when it is clear that the deficiencies of the complaint cannot be

20   cured by amendment.  *DeSoto v. Yellow Freight Sys., Inc.* 957 F.2d 655, 658 (9th Cir. 1992).

21          Conclusory allegations of law, unwarranted deductions of fact, or unreasonable inferences,

22   however, are insufficient to defeat a motion to dismiss.  *See Fields v. Legacy Health Sys.*, 413 F.3d

23   943, 950 n.5 (9th Cir. 2005); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

24          Rule 12(e) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[i]f a

25   pleading to which a responsive pleading is permitted is so vague or ambiguous that a party

26   cannot reasonably be required to frame a responsive pleading, the party may move for a more

27   definite statement before interposing a responsive pleading." A motion for more definite statement

28                                              4

should be granted where the complaint fails to provide a "short and plain statement" of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). The Court has wide discretion to direct a plaintiff to provide, "by amendment to the complaint or by affidavits, further particularized allegations of fact." *Warth v. Seldin*, 422 U.S. 490, 501-2 (1975).

## II.    Removal Jurisdiction

Removal of an action from state court is proper where the federal court has original jurisdiction over the plaintiff's claim. 28 U.S.C. §§ 1131, 1441. District courts have original jurisdiction over an action falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), regardless of the amount in controversy. 9 U.S.C. § 203.

Section 202 defines an agreement or award falling under the Convention:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

Section 205 of the New York Convention further provides for the removal of such cases:

> Where the subject matter of an action or proceeding pending in a State court *relates to* an arbitration agreement or award *falling under* the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205 (emphasis supplied).

Put in other terms, the removing party has the burden to show both that (1) an agreement exists that "falls under" the New York Convention, and (2) the dispute "relates to" the arbitration agreement. *Beiser v. Weyler*, 284 F.3d 665, 666 (5th Cir. 2002).

5

1    It is well-settled that the §1441 removal statute is strictly construed against removal

2    jurisdiction.  *Hofler v. Aetna U.S. Healthcare of Cal., Inc*., 296 F.3d 764, 768 (9th Cir. 2002).

3    However, Congress created special removal rights for New York Convention Act cases and 9 U.S.C.

4    § 205 "is one of the broadest removal provisions . . . in the statute books." *Acosta v. Master*

5    *Maintenance and Const. Inc*., 452 F.3d 373, 377 (5th Cir. 2006).

6    The burden of establishing federal jurisdiction falls to the party invoking the removal statute.

7    *California ex rel. Lockyer v. Dynegy, Inc*., 375 F.3d 831, 838 (9th Cir. 2004).

8    A federal court may remand a case back to state court for lack of subject matter jurisdiction.

9    28 U.S.C § 1447(c).

10   **DISCUSSION**

11   **I.      Motion to Dismiss or for More Definite Statement**

12   Sequus argues that the FAC, with respect to Counts 3, 6, 9 and 14, contains conclusory

13   allegations of wrongdoing which are insufficient to state a claim upon which relief can be granted.

14   With respect to Count 3 for tortious interference, Sequus contends Infuturia has not alleged

15   facts showing that Sequus knew of, intended to disrupt, or did disrupt Infuturia's contractual

16   relationship.  With respect to Count 9 for civil conspiracy, Sequus argues that Infuturia's failure to

17   adequately plead the underlying claim for tortious interference fails to state a claim of conspiracy.

18   *See Entm't Research Group, Inc. v. Genesis Creative Group, Inc*., 122 F.3d 1211, 1228 (9th Cir.

19   1997) (noting that to have a valid conspiracy cause of action, the plaintiff must have another tort

20   upon which to base its civil conspiracy claim).  Additionally, the FAC does not allege facts showing

21   the formation or operation of a conspiracy.

22   Count 6 of the FAC alleges conversion, defined by California law as "any act of dominion

23   wrongfully asserted over another's personal property in denial of or inconsistent with his rights

24   therein.  *In re. Bailey*, 197 F.3d 997 (9th Cir. 1999).  Sequus contends Infuturia has failed to plead

25   facts establishing the ownership of property capable of being converted under California law.

26   Infuturia argues that the property right that is subject to a claim of conversion is the "exclusive

27   worldwide" right, under the Agreement, "to develop, market, use, manufacture, exploit and

28

commercialize" the '314 Patent, as well as all "Compounds, Products, and Improvements."  The right allegedly includes an exclusive proprietary right to *other* several liposome-related pharmaceutical products (e.g., the '308 Patent, '311 Patent, '514 Patent, '715 Patent, ' 353 Patent, '881 Patent, '002 Patent, '554 Patent and '771 Patent).  The Court agrees with Infuturia that California law recognizes conversion of intangibles, such as domain names, intangible contract rights, and patent rights.  *Kremen v. Cohen,* 325 F.3d 1035 (9th Cir.2003).

Finally, Count 14 alleges fraudulent concealment.  Sequus argues the claim should be dismissed because Plaintiff has failed to allege with particularity, as required by FRCP 9(b), the following elements: (1) that Sequus had a duty to disclose information to Infuturia; (2) that Sequus intentionally concealed or suppressed a fact intending to defraud Infuturia; and (3) that Infuturia was damaged as a result of the alleged suppression or concealment of a fact.

Plaintiff contends that it is capable of curing any deficiencies in its complaint by setting forth facts to satisfy the elements of every Count alleged against Sequus in its FAC. The Court agrees that, in light of the arguments made by Plaintiff in Sections I and II of its opposition brief, a Rule12(e) Motion for More Definite Statement is the appropriate remedy for curing the specific inadequacies identified by Sequus in its Motion to Dismiss. *Bowles v. Wheeler*, 152 F.2d 34 (9th Cir. 1945) (indefiniteness of complaint is not ground for dismissal, and if defendant needs additional information to enable him to answer, procedure provided by rules is motion for more definite statement).

Accordingly, the Court GRANTS Defendant's motion to provide a more definite statement and Plaintiff is ORDERED to:

(1) identify in the Second Amended Complaint the factual basis to support Infuturia's claim in Count 3 that Sequus tortiously interfered with Infuturia's contract with Yissum; specifically to allege facts to show that Sequus knew of, intended to disrupt, or did disrupt Infuturia's contractual relationship;

(2)  identify in the Second Amended Complaint the factual basis to support Infuturia's claim in Count 6 that Sequus formed or operated a conspiracy to tortiously interfere with Infuturia's

7

1   contract with Yissum;

2       (3) identify in the Second Amended Complaint the Sequus products - particular compounds,

3   pharmaceutical compositions, improvements, variations, developments, inventions, etc. - that

4   allegedly fall within the scope of Infuturia's purported contractual rights relating to the '314 Patent,

5   and whether Infuturia's claims include or exclude the Doxil-related claims at the heart of Infuturia's

6   original Complaint, for the purposes of providing a factual basis for Infuturia's claim of conversion

7   in Count 9; and (4) allege  with particularity, as required by FRCP 9(b), the following elements of

8   Infuturia's claim in Count 14 for fraudulent concealment: (1) that Sequus had a duty to disclose

9   information to Infuturia and the basis of that duty; (2) that Sequus intentionally concealed or

10  suppressed a fact intending to defraud Infuturia; and (3) that Infuturia was damaged as a result of the

11  alleged suppression or concealment of a fact.

12  **II.       Motion to Remand**

13      Infuturia requests the Court remand the action to state court because the removing parties

14  improperly base the removal on an arbitration agreement and arbitral award to which they are not

15  parties.  The defendants contend that removal was proper for two reasons: (1) because the subject

16  matter of the plaintiff's claims against them is "related to" the foreign arbitration agreement; and (2)

17  because the subject matter of the case "relates to" the Israeli arbitral award, which they intend to

18  raise in support of their affirmative defenses of collateral estoppel and res judicata.

19      Infuturia raises the threshold jurisdictional issue of whether non-parties to an arbitration

20  agreement or arbitral award are entitled to removal under 9 U.S.C. § 205.  There is no precedent in

21  the Ninth Circuit that addresses the issue directly.  The Court is disinclined to apply the narrow

22  holding in *AtGames Holdings v. Radica Games*, 394 F.Supp.2d 1252 (C.D. Cal. 2005) and

23  *GlobalSantaFe Drilling v. Ins. Co. of the State of Pa.*, 2006 WL 13090 (N.D. Cal. 2006).  The New

24  York Convention itself is silent.

25      One reason the *AtGames* holding is not persuasive is that the Court simply stated that the

26  plain meaning of the statute makes it "clear that a state court action is removable if (1) the parties to

27  the action have entered into an arbitration agreement, and (2) the action relates to that agreement."

28                                          8

Yet nowhere in the New York Convention is the requirement that a removing party be a signatory to the contract.  Without some analysis or legal authority to support that particular interpretation of the statute, this Court is not inclined to adopt it as a rule.

In addition, the court in *GlobalSantaFe* found that even though the removing party had been a signatory to the arbitration agreement, once the removing defendant had been dismissed, the defendant who had not been a party to the arbitration agreement had no basis for removal. Not only had that particular defendant not entered into an arbitration agreement with the plaintiff, but its cross-claims were not deemed "related to" the arbitration agreement.  The *GlobalSantaFe* Court found that remand was consistent with Supreme Court precedent that non-parties to an arbitration agreement cannot be compelled to arbitrate their claims (*see AT & T Techs, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 647 (1986); that is, in the absence of an alternate theory such as agency or equitable estoppel.

Because there is no provision in Section 205 that precludes a non-signatory to an arbitration agreement from removing an action (the *AtGames* holding), the Court will analyze whether the removing defendant has any right to assert the arbitration clause or arbitral award  if it "falls under" the New York Convention and  "relates to" the subject matter of the litigation.  *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002).

**A**.     **The License Agreement Falls Under the New York Convention.**

There is no dispute that the Agreement falls under the New York Convention as required by 9 U.S.C. § 205.  There is both an arbitration agreement and an arbitral award that "arises out of a legal relationship," in this case contractual, that is "commercial."  The parties to the Agreement are foreign corporations, which brings the Agreement squarely within the New York Convention, Article I.  Yissum is an Israeli corporation and Infuturia is organized under the law of the British Virgin Islands and has corporate headquarters in Switzerland.  Israel, the site of the arbitration, is a signatory to the New York Convention.

**B.**     **The Subject Matter of the Litigation Relates to the Arbitration Agreement or Arbitral Award.**

9

The leading case interpreting the "relates to" requirement in Section 205 is *Beiser v. Weyler*. In *Beiser*, the Court explained that "relates to" as found in Section 205 sweeps broadly, and "whenever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." 284 F.3d 665, 669 (5th Cir. 2002); *see also Acosta v. Master Maintenance and Construction, Inc.*, 452 F.3d 373, 376 (5th Cir. 2006). The standard is deferential, but the arbitration clause must provide a defense, or the case be remanded if no other basis for federal jurisdiction exists. *Id*. at 676. *See also*, *Hawkins v. KPMG*, 423 F.Supp.2d 1038, 1048-1049 (N.D.Cal. 2006)(applying *Beiser* and finding that because there was a reasonable possibility that defendant would be able to assert the arbitration clause against the plaintiff under an equitable estoppel theory, the clause was related to the lawsuit); *Certain Underwriters at Lloyd's v. Warrantech Corp*. 2004 WL 5307516 (N.D. Tex. 2004)(under *Beiser*, so long as the affirmative defenses of collateral estoppel and res judicata based on certain adjudications in the arbitration award were not facially frivolous, removal was proper).

The Israeli Defendants argue that because the complaint seeks declaratory relief regarding the effect of the Israeli arbitral award (FAC ¶ 135), and because they intend to argue that the preclusive effect of the arbitral award gives rise to defenses of collateral estoppel and res judicata, that this Court has federal jurisdiction under Section 205 to decide the merits of the defenses because both the subject matter of the complaint and the defenses "relate to" the arbitration agreement. [Israeli Defs.' Motion 22-24].

The general allegations of the FAC detail a relationship between Barenholz and the Hebrew University to conduct medical research, including the development and manufacture of liposome-related drugs. [FAC ¶ 7-11]. The Israeli Defendants are alleged to have worked extensively with Sequus since the mid-1980s on the development and manufacture of liposome-related drugs. In fact, the Israeli Defendants were allegedly involved in research to discover and market a liposome that could circulate in the human body for a long period of time. The research is referred to as the Lipsome Project, and the Israeli Defendants obtained Patent '314 as a result of this work.

The Agreement establishes rights and obligations concerning the '314 Patent. The parties

agreed to arbitrate any disputes connected in any way to the implementation of the Agreement.

The FAC alleges Infuturia has rights under the Agreement to the '314 patent which have been confirmed by the arbitral award and of which all defendants had knowledge  [FAC ¶¶ 31-44]. The FAC further alleges that all defendants profited from research, inventions and developments that they knew fell within the scope of the Yissum-Infuturia contracts, and withheld from Infuturia profits that belonged to it. [45-107].  Because Infuturia had in place a valid and existing contract, including the Agreement, and defendants knew of the existence of the contract, they conspired to intentionally interfere with those rights, and exercised dominion over those legal rights [FAC ¶¶ 108-113, 117-120].  Further, the Israeli defendants breached a fiduciary duty to Infuturia by failing to disclose collaborations with third parties [FAC ¶¶ 121-124] and refusing to provide information to which they knew Infuturia was entitled [FAC ¶¶ 125-127].  As a result of the tortious conduct, Infuturia has allegedly lost money.

Contrary to plaintiff's assertion that the litigation does not "relate to" the Agreement with Yissum, it is evident that the scope of the contractual rights and duties established by the Agreement are central to this claims in litigation.  The arbitration clause in paragraph 17 of the Agreement is sufficiently broad to encompass the claims in the litigation.  In addition, the foreign arbitral award is equally central.  The plaintiff intends to rely on the arbitrator's decision to assert its contractual rights created by the Agreement.  The defendants intend to rely on the arbitrator's decision to assert affirmative defenses to the claims against them.

The Court agrees with the defendants and finds that removal was proper pursuant to  9 U.S.C. § 205 because the subject matter of the litigation relates to the License Agreement and the Arbitral Award falling under the New York Convention, and the removal occurred before the trial.

Accordingly, the Motion to Remand is DENIED.

## **CONCLUSION**

The Court HEREBY DENIES Plaintiff's Motion to Remand [Docket No. 37]; GRANTS WITH LEAVE TO AMEND Defendant Sequus Pharmaceuticals, Inc.'s Motion for More Definite

Statement of Counts 3, 6, 9 and 14 [Docket No. 24]; and DENIES AS MOOT Defendants The Hebrew University's and Yechezkel Barenholz's *Ex Parte* Application to Stay or Continue the Proceedings Until Defendants' Motion to Stay Proceedings is Heard [Docket No. 63].

IT IS FURTHER ORDERED that Plaintiff shall have twenty (20) days from the date of the Order to file a Second Amended Complaint and Defendants twenty (20) days to file a responsive pleading.  The Case Management Conference is CONTINUED to **April 1, 2009, at 3:15 p.m.**; and pursuant to the parties' stipulation, the parties defer the service of their respective Rule 26(a)(1) and Rule 26 (f) disclosures until forty-five (45) days from the date of this Order. [Docket No. 80].

IT IS SO ORDERED.

Dated: 2/23/09

Saundra Brown Armstrong
United States District Judge

12